Case 5:20-cv-00680-OLG   Document 29   Filed 10/26/20   Page 1 of 20

FILED
October 26, 2020
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY: _____ JU
DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| VIZZA WASH, LP d/b/a THE WASH TUB, § § *Plaintiff*, § § v. § § NATIONWIDE MUTUAL INSURANCE § COMANY and BRADLEY WORTH, § § *Defendants.* § | Civil Action No. 5:20-cv-00680-OLG |

## ORDER

On this day, the Court considered Plaintiff's Opposed Motion to Remand (docket no. 4) (the "Motion to Remand") and Defendant's Motion to Dismiss Plaintiff's Second Amended Petition for Failure to State a Claim (docket no. 14) (the "Motion to Dismiss"). Having considered the motions and the parties' briefing, the Court concludes that Plaintiff's Motion to Remand should be **DENIED** and Defendant Nationwide's Motion to Dismiss should be **GRANTED**.

## BACKGROUND

Plaintiff Vizza Wash, LP d/b/a The Wash Tub ("Plaintiff") operates various car wash locations in Bexar County and throughout Central Texas (collectively, Plaintiff's "Property"). *See* docket no. 9 pp. 2-3. Plaintiff insures its business Property with a Policy issued by Defendant Nationwide Mutual Insurance Company ("Nationwide"). *See* docket no. 9-1; docket no. 14-2 (the "Policy"). Among other types of protections, the Policy provides "business income" and "civil authority" coverage, subject to certain limitations and/or exclusions. *See generally id.*

On February 11, 2020, the World Health Organization identified the 2019 Coronavirus ("Covid-19") as a disease. Since then, the Covid-19 virus has spread across the world, and health

1

organizations, including the Center for Disease Control, characterize Covid-19 as a global pandemic. The outbreak in the United States continues to evolve. To stop "community spread" of Covid-19, state and local governments have issued executive orders that limit the opening of certain businesses and require social distancing. Bexar County Judge Nelson Wolff and Texas Governor Greg Abbott have issued executive orders throughout this crisis, including Orders on March 23, 2020 and March 31, 2020, respectively, that closed certain "non-essential" businesses, including Plaintiff's business locations. *See* docket no. 9-2 & 9-3 (the "Orders"). As a result of the Orders—as well as the public's fear of the Covid-19 virus—Plaintiff alleges that it suffered business income losses. *See* docket no. 9 ¶¶ 7, 10-12. Plaintiff's allegations indicate that Plaintiff continues to incur business losses as the result of the ongoing Covid-19 pandemic. *See id*.

Following the issuance of the shutdown Orders, Plaintiff submitted an insurance claim to Nationwide seeking coverage for its business income losses. *See id*. at ¶ 12. Nationwide denied the claim on the basis that Plaintiff's losses were not covered and/or were excluded under the Policy. *See id*. at ¶¶ 16-17. Following the denial of its claim, Plaintiff initiated this lawsuit by filing its Original Petition in Cause No. 2020-CI-08311, in the 407th Judicial District of Bexar County, Texas on May 6, 2020. *See* docket no. 1-1. Plaintiff's lawsuit asserts claims against both Nationwide and against Defendant Bradley Worth ("Worth"), Plaintiff's insurance agent. *See id*. Against Nationwide, Plaintiff asserts claims for breach of contract, violations of the Texas Insurance Code's unfair settlement practices and prompt payment of claims statutes, and breach of the duty of good faith and fair dealing. *See generally* docket no. 9. Against Worth, Plaintiff asserts claims for negligence, negligent misrepresentation, violations of the Texas Insurance Code, and violations of the Deceptive Trade Practices Act ("DTPA"). *See generally id*.

On June 5, 2020, Nationwide removed the action to this Court on the basis of this Court's diversity jurisdiction. *See* docket no. 1. Although there appears to be no dispute that Plaintiff and Worth are both citizens of Texas, Nationwide's removal contended that complete diversity exists between the appropriate parties because Worth was improperly joined in the lawsuit.[1] *See* docket no. 1. On June 12, 2020, Nationwide filed a motion seeking dismissal of Plaintiff's First Amended Complaint (the operative complaint at the time of removal). *See* docket no. 3. On the same day, Plaintiff filed a Motion to Remand asserting that Worth was a proper defendant, and thus, that this Court lacks diversity jurisdiction. *See* docket no. 4. On June 19, 2020, Nationwide filed a response to Plaintiff's Motion to Remand. *See* docket no. 8.

On June 26, 2020, Plaintiff filed a Second Amended Complaint against Nationwide and Worth.[2] *See* docket no. 9. On July 10, 2020, Defendant Nationwide filed its pending Motion to Dismiss, seeking dismissal of Plaintiff's operative Second Amended Complaint. *See* docket no. 14. Plaintiff filed a response to Nationwide's Motion to Dismiss on July 24, 2020, and Nationwide filed a reply in support of its motion on July 31, 2020. *See* docket nos. 18 & 24. In the period since the parties completed their briefing, both Plaintiff and Nationwide have filed supplemental authorities in support of their positions. *See* docket nos. 25, 26 & 27.

## **ANALYSIS**

Presently pending before the Court is Defendant Nationwide's Motion to Dismiss. However, before determining whether Nationwide's motion has merit, the Court must first determine whether it even has jurisdiction to conduct such an analysis. Importantly, if Worth is a

---

[1] The record indicates—and Plaintiff does not appear to dispute—that Nationwide is a citizen of Ohio for the purposes of the Court's "diversity" jurisdiction analysis. *See, e.g.*, docket no. 1 p. 4.

[2] As a result, Nationwide's original motion to dismiss (docket no. 3) does not target the allegations in Plaintiff's operative complaint, and thus, it will be denied as moot.

proper defendant in this action, this case lacks complete diversity and thus this Court lacks jurisdiction. For that reason, the Court will first analyze whether Worth was improperly joined and whether Plaintiff's Motion to Remand should be granted.

### I. Nationwide's Assertion of Improper Joinder and Plaintiff's Motion to Remand

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). Motions to remand require the Court to consider whether removal was proper, which in turn requires that a federal district court have original jurisdiction over the case. *See id.*

Federal district courts have original jurisdiction over civil actions if the parties have diverse citizenship and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a). Diversity jurisdiction requires complete diversity—in other words, no Plaintiff is a citizen of the same state as any Defendant. *See Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U.S. 546, 553-54 (2005) ("Incomplete diversity destroys original jurisdiction with respect to all claims."). Thus, without complete diversity, removal is improper. *See* 28 U.S.C. § 1441(a). Moreover, the removing party bears the burden of establishing federal jurisdiction. *BEPCO, L.P. v. Santa Fe Minerals, Inc.*, 675 F.3d 466, 470 (5th Cir. 2012).

As noted above, the parties do not dispute that Plaintiff and Worth are citizens of Texas. At issue, rather, is whether Worth's citizenship destroys this Court's diversity jurisdiction or whether he is improperly joined. Improper joinder is a "narrow exception to the rule of complete diversity." *McDonal v. Abbott Labs.*, 408 F.3d 177, 183 (5th Cir. 2005). If a court finds that a non-diverse defendant is improperly joined, the "court may disregard the citizenship of that defendant, dismiss the non-diverse defendant from the case, and exercise subject matter jurisdiction over the

remaining diverse defendant." *Kotzur v. Metro. Lloyds Ins. Co. of Tex.*, No. SA-19-CV-01165-XR, 2019 WL 6168207, at *2 (W.D. Tex. Nov. 19, 2019) (citing *Flagg v. Stryker Corp.*, 819 F.3d 132, 136 (5th Cir. 2016)).

Other than showing actual fraud, the removing party may establish improper joinder by showing the "inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Smallwood v. Ill. Cent. R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (quoting *Travis v. Irby*, 326 F.3d 644, 646-47 (5th Cir. 2003)). The *Smallwood* court further stated that this Rule 12(b)(6)-type analysis should determine "whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Id.*

In determining whether Worth was improperly joined at the time of removal, the Court considers the allegations in Plaintiff's First Amended Complaint (the operative complaint at the time of removal). *See* docket no. 1-1. And having reviewed those allegations, the Court finds that Nationwide's removal was appropriate because Worth was improperly joined in the lawsuit.[3] Importantly, the record demonstrates that Defendant Nationwide has shown that there is no possibility of recovery by Plaintiff against Worth, at least insofar as any such relief would be premised on the allegations and theories of relief that Plaintiff has presently alleged.

Plaintiff's claims against Worth are generally premised on misrepresentations (either affirmative statements or omissions) that Worth allegedly made either before or after providing Plaintiff with the Policy in question. However, Plaintiff's First Amended Complaint is devoid of

---

[3] Having reviewed the Second Amended Complaint (docket no. 9) as well, the Court would reach the same conclusion if those allegations were considered as part of the improper joinder analysis.

any *specific* misrepresentations made by Worth that induced Plaintiff to purchase the Policy. Notably, there are no allegations indicating that Plaintiff *specifically* requested a certain type of coverage from Worth that Worth failed to obtain when he sold the Policy to Plaintiff. Moreover, with respect to Worth's purported misrepresentations by omission, there are no other allegations that support an inference that Worth had any specific basis for knowing that Plaintiff expected its requested Policy to provide coverage for business interruptions caused by the ongoing Covid-19 pandemic (or any other specific virus) when Worth procured the Policy.

Importantly, the absence of these types of allegations means that Plaintiff's claims against Worth based on his pre-loss conduct fail as a matter of law. With respect to Plaintiff's negligence claim against Worth, Plaintiff must show that it requested "a specific type of insurance that the agent did not provide in accordance with the plaintiff's expectations or that the plaintiff was wrongly led to believe that his policy provided protection against a particular risk that it did not." *Harding v. Higginbotham Ins. Agency, Inc.*, Civil Action No. 5:17-CV-188-C, 2017 WL 11510643, at *2 (N.D. Tex. Dec. 11, 2017) (citing *May v. United Services Ass'n of Am.*, 844 S.W.2d 666, 669-70 (Tex. 1992)). As noted above, Plaintiff does not allege that it requested any *specific* type of insurance from Worth (much less that its Policy cover the risk of business interruption due to a global pandemic).

Any potential claims against Worth for violations of the DTPA, Texas Insurance Code, and/or for negligent misrepresentations fail for similar reasons. Although Worth—an insurance sales agent—could theoretically be liable under the DTPA or Texas Insurance Code for misrepresentations,[4] the type of facts that are necessary to support such a claim have not been

---

[4] *See Griggs v. State Farm Lloyds*, 181 F.3d 694, 701 (5th Cir. 1999) (citing *Liberty Mutual Ins. Co. v. Garrison Contractors, Inc.*, 966 S.W.2d 482 (Tex. 1998)) (noting that an agent may be liable under Texas Insurance Code and DTPA "when the agent misrepresents specific policy terms prior

alleged by Plaintiff. Indeed, "[a]bsent an affirmative misrepresentation, [an insured's] mistaken belief about the scope of coverage is not actionable under the DTPA, [] the Texas Insurance Code" or as a claim for negligent misrepresentation. *Wyly v. Integrity Ins. Sols.*, 502 S.W.3d 901, 908 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (addressing requirements for misrepresentation claims under DTPA and Texas Insurance Code); *Sohmer v. Am. Med. Sec., Inc.*, No. Civ.A. 3:02-CV-1680, 2002 WL 31323763, at *2-3 (N.D. Tex. Oct. 15, 2002) (same, with respect to negligent misrepresentation claim). Moreover, to the extent Plaintiff alleges that Worth violated the law by not providing an unsolicited explanation regarding the Policy's exclusion of business interruption losses resulting from the ongoing pandemic, *see* docket no. 1-1 pp. 7-8, Texas courts have consistently noted that an insurance agent does not have a general duty to explain all coverage limitations or the terms and conditions of an insurance policy. *See, e.g., Ins. Network of Tex. v. Kloesel*, 266 S.W.3d 456, 467-68 (Tex. App.—Corpus Christi 2008, pet. denied) (noting that the Texas Supreme Court has not held that an agent may be liable for "failing to disclose a policy's coverage limitations"); *Moore v. Whitney-Vaky Ins. Agency*, 966 S.W.2d 690, 692 (Tex. App.—San Antonio 1998, no pet.) (noting the same and stating that "we are unwilling to otherwise extend agent liability beyond affirmative misrepresentations to failures to disclose policy coverage limitations").

Similarly, Plaintiff's claims premised on post-loss misrepresentations are also deficient. Plaintiff asserts that Worth made misrepresentations after the onset of the pandemic (and the interruption to Plaintiff's business), including that the Policy does not provide coverage for "communicable diseases." *See* docket no. 1-1 p. 7. But—even assuming the truth of those

---

to a loss, and the insured's reliance upon that misrepresentation actually causes the insured to incur damages.").

allegations—Plaintiff fails to allege (or otherwise explain) any specific injury that resulted from such statements. The record makes clear that Worth's post-loss statements did not induce Plaintiff to purchase the Policy (which it had already purchased), nor has Plaintiff identified any other damages resulting from Worth's alleged post-loss misrepresentations. Indeed, Plaintiff's claimed damages are premised on lost benefits under the Policy—damages recoverable under contract, if appropriate—and those damages are not the result of (and/or otherwise impacted) by any of Worth's purportedly incorrect post-loss statements. Thus, Plaintiff has failed to allege any actionable claim against Worth based on any post-loss misrepresentation. *See One Way Invs., Inc. v. Century Sur. Co.*, 3:14-CV-2839-D, 2014 WL 6991277, at *3 (N.D. Tex. Dec. 11, 2014) (stating that "post-loss misrepresentations generally do not give rise to liability" and explaining why plaintiff had failed to demonstrate that it might be able to recover against insurance adjuster based on post-loss representations).

Finally, to the extent Plaintiff asserts any claim against Worth for civil conspiracy, such a claim is only actionable when the defendant(s) participated in an underlying tort. *See Allstate Ins. Co. v. Receivable Fin. Co., LLC*, 501 F.3d 398, 414 (5th Cir. 2007). As discussed above, Plaintiff has failed to assert an independent actionable claim against Worth (or against Nationwide),[5] and thus, there is no underlying "tort" on which Plaintiff may premise its civil conspiracy claim against Worth.

In sum, a review of Plaintiff's existing allegations[6] and the relevant law demonstrate that Plaintiff has no viable cause of action against Worth pursuant to any of the theories asserted in

---

[5] Plaintiff's claims against Nationwide are addressed in Section II of this Order.

[6] Plaintiff's Motion to Remand appears to contain certain additional assertions that—if alleged as fact—*might* make Plaintiff's case for having a claim against Worth *stronger*. For example, Plaintiff's Motion to Remand states that "Plaintiff asked for full coverage for business interruption" and that Worth "fail[ed] to procure the Policy and coverage asked for." *See* docket

Plaintiff's First Amended Complaint. Because Plaintiff has no possibility of recovery against Worth, he was improperly joined at the time of removal. Accordingly, the court concludes that Worth should be dismissed as a party from this case. The Court also therefore concludes that it is appropriate to deny Plaintiff's Motion to Remand, as complete diversity exists in this case with respect to the properly joined parties. *See One Way Investments,* 2014 WL 6991277.

## II. Nationwide's Motion to Dismiss

Because the Court has concluded that Worth was improperly joined, the Court has jurisdiction to consider the merits of Plaintiff's claims against Defendant Nationwide. Thus, the Court may proceed to analyzing the merits of Nationwide's Motion to Dismiss. Nationwide argues that Plaintiff's contract claims must fail because the Policy does not provide coverage for—and/or explicitly excludes coverage for—the type of losses and damages sought by Plaintiff in this case. *See* docket no. 14. Further, Nationwide argues that Plaintiff's extra-contractual claims fail because Plaintiff has not alleged any injury independent of Plaintiff's alleged right to recover policy benefits. *See id*. Plaintiff, on the other hand, contends that the Policy does provide coverage for the business income losses it has suffered as result of the Covid-19 pandemic, and thus, that each of Nationwide's arguments must be rejected. *See* docket no. 18.

---

no. 4 pp. 7, 10. However, factual allegations to this effect (or even supporting such an inference) are noticeably absent in both Plaintiff's First Amended Complaint *and* Plaintiff's Second Amended Complaint that has been filed in the period since Plaintiff filed its Motion to Remand. Thus, it appears that Plaintiff is unable to assert the allegations necessary to support these types of claims against Worth. In any event, and for the avoidance of doubt, the Court has not concluded that these assertions would be sufficient to state a valid claim against Worth even if they had been included in Plaintiff's First Amended Complaint. Indeed, even assuming Plaintiff alleged that it requested "full coverage" from Worth, it is not clear that doing so would be sufficient to support its claims against Worth. *See Manion v. Security National Ins. Co*., 2002 WL 34230861, *2 (Tex. App.— Corpus Christi, August 15, 2002, no pet.).

9

Under Fed. R. Civ. P. 8(a), a complaint is considered well pled if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a) is considered in conjunction with Fed. R. Civ. P. 12(b)(6), which provides that a complaint may be dismissed if it "fails to state a claim upon which relief can be granted." Courts apply these rules through the process outlined by the Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Pursuant to that framework, dismissal is appropriate under Fed. R. Civ. P. 12(b)(6) if, assuming the truth of all facts alleged in the complaint, it fails to state a "claim to relief that is plausible on its face." *Iqbal*, 556 at 678 (quoting *Twombly*, 550 U.S. at 570). In order to state a plausible claim to relief, the complaint must include "allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)). A court need not "accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678. Finally, in assessing a motion to dismiss under Rule 12(b)(6), a court's review is generally limited to the complaint, documents attached to the complaint, and any documents attached to the motion to dismiss that are referred to in the complaint and are central to the plaintiff's claims. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *see also Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

Applying this standard, the Court will proceed with its Rule 12(b)(6) analysis for each of Plaintiff's claims against Nationwide.

### A. Plaintiff's Breach of Contract Claim

To plead a claim for breach of an insurance contract, Plaintiff must prove: (1) the existence of a valid contract; (2) the plaintiff performed or tendered performance; (3) the defendant breached

the contract; and (4) the plaintiff was damaged as a result. *Beverick v. Koch Power, Inc.*, 186 S.W.3d 145, 150 (Tex. App.—Houston [1st Dist.] 2005, pet denied). Under Texas law, "[i]nsurance policies are contracts and are governed by the principles of interpretation applicable to contracts." *Amica Mut. Ins. Co. v. Moak*, 55 F.3d 1093, 1095 (5th Cir. 1995). Under Texas contract-interpretation standards, the "paramount rule is that courts enforce unambiguous policies as written" such that court must "honor plain language, reviewing policies as drafted, not revising them as desired." *Pan Am Equities, Inc. v. Lexington Ins. Co.*, 959 F.3d 671, 674 (5th Cir. 2020). Importantly, an "ambiguity" is "more than lack of clarity"; a court should find an insurance contract ambiguous only if "giving effect to all provisions, its language is subject to two or more reasonable interpretations." *Id.* (internal quotation marks and citation omitted). To determine whether ambiguity exists—a question of law—a court must "examine the entire contract in order to harmonize and give effect to all provisions so that none will be meaningless." *Id.* (internal quotation marks and citation omitted); *see also Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003) ("In interpreting these insurance policies as any other contract, we must read all parts of each policy together and exercise caution not to isolate particular sections or provisions from the contract as a whole."); *State Farm Lloyds v. Page*, 315 S.W.3d 525, 527 (Tex. 2010) ("The fact that the parties may disagree about the policy's meaning does not create an ambiguity." (citations and internal quotation marks omitted)). "The goal in interpreting . . . [language within the contract] is to ascertain the true intentions of the parties as expressed in the writing itself." *Richards v. State Farm Lloyds*, No. 19-0802, 2020 WL 1313782, at *5 (Tex. Mar. 20, 2020) (citation and internal quotation marks omitted). In a suit to recover on an insurance contract, the insured bears the initial burden of showing that there is coverage, while the insurer has the burden of proof as to "the applicability of any exclusions in the policy." *O'Quinn* v. *Lexington Ins. Co*,

906 F.3d 363, 367 (5th Cir. 2018). If the insurer proves that an exclusion applies, the burden shifts back to the insured to show that the claim is within an exception to the exclusion. *Guar. Nat'l Ins. Co. v. Vic Mfg. Co.*, 143 F.3d 192, 193 (5th Cir. 1998).

Plaintiff's breach of contract claim fails because a review of the Policy's language and Plaintiff's complaint demonstrates that the Court could draw no plausible inference that Nationwide breached the Policy. *Even assuming* Plaintiff has adequately alleged that Plaintiff's claims are encompassed by the coverage language in the Policy's "business income" provision and/or "civil authority" provision,[7] Plaintiff's breach of contract claim fails because Nationwide

---

[7] The Policy defines "Covered Cause of Loss" as a "direct physical loss" unless the loss is otherwise excluded or limited under the Policy. *See* docket no. 9-1 p. 3. With respect to coverage for loss of business income, the Policy provides the following:

> We will pay for the actual loss of "business income" you sustain due to necessary suspension of your "operations" during the "period of restoration." The suspension must be caused by **direct physical loss of or damage** to property at the described premises. **The loss or damage must be caused by or result from a Covered Cause of Loss**.

*See id.* at p. 7 (the "Business Income" provision) (emphasis added). Similar language is also used for the "civil authority" provision that extends the scope of Business Income coverage:

> When a **Covered Cause of Loss causes damage to property** other than property at the described premises, we will pay for the actual loss of Business Income you sustain . . . , provided that both of the following apply:
>
> (1) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and
>
> (2) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

*See id.* at p. 8 (the "Civil Authority" provision) (emphasis added). Many courts applying Texas law have routinely held that "direct physical loss" requires there be some "distinct, demonstrable physical alteration of the property." *Ross v. Hartford Lloyd Ins. Co.*, No. 4:18-CV-00541-O, 2019 WL 2929761, at *6–7 (N.D. Tex. July 4, 2019); *see also Hartford Ins. Co. v. Miss. Valley Gas Co.*, 181 Fed. Appx. 465, 470 (5th Cir. 2006) (holding that "direct physical loss" requires there be "some physical manifestation of loss or damage to the" property itself); *De Laurentis v. United*

has demonstrated that the Policy contains a "virus exclusion" that is plainly applicable to Plaintiff's insurance claim. Specifically, the Policy states as follows:

> B. EXCLUSIONS
>
> 1. We will not pay for **loss or damage caused directly or indirectly** by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area. . . .
>
> > i. Virus or Bacteria
> >
> > > (1) Any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

*See* docket no. 14-2 pp. 102-104 of 202 (the "Virus Exclusion") (emphasis added).

---

*Servs. Auto. Ass'n*, 162 S.W.3d 714, 723 (Tex. App. 2005) (holding that "physical loss" required "tangible damage" after analyzing the dictionary definitions of "physical" and "loss"). Indeed, in recent months, numerous courts—including at least one court in this District and Division—have held that the lost *use* of a property due to the Covid-19 pandemic and/or government shutdown orders did not constitute "direct physical loss of" a property such that it may be the basis for a claim for loss of business income. *See, e.g., Diesel Barbershop, LLC v. State Farm Lloyds*, 5:20-CV-461-DAE, 2020 WL 4724305, at *5 (W.D. Tex. Aug. 13, 2020); *Turek Enterprises, Inc. v. State Farm Mut. Auto. Ins. Co.*, 20-11655, 2020 WL 5258484, at *5-7 (E.D. Mich. Sept. 3, 2020); *10e v. Travelers Indem. Co.*, No. 2:20-cv-04418-SVW-AS, 2020 WL 5359653, at *5 (C.D. Cal. Sep. 2., 2020). In this case, Plaintiff has not alleged any physical alteration or damage to its own Property or the adjacent properties, and thus, it appears that Plaintiff's contract claim *might* also be subject to dismissal on this basis.

On the other hand, the Court notes that the liability portion of the Policy states that "property damage" is defined as "physical injury to tangible property . . . or loss of use of tangible property that is not physically injured." *See* docket no. 14-2 p. 145 of 202. The parties do not provide detailed discussion as to how these various clauses interact (if at all), but in light of this language, the Court declines to determine whether the Policy might provide coverage for Plaintiff's loss of the "use" of its Property, at least in certain other instances. *See Knott*, 128 S.W.3d at 216 (noting that courts should "exercise caution not to isolate particular sections or provisions from the contract as a whole"). However, the Court does not need to resolve that issue as part of this Order, as it is plainly apparent that Plaintiff's claimed losses are excluded from coverage by the Policy's "Virus Exclusion," *even assuming* they would otherwise be encompassed by the Business Income provision and/or Civil Authority provision in the Policy.

Nationwide argues that the Virus Exclusion is unambiguous and plainly excludes coverage for any loss or damage caused directly or indirectly by the Covid-19 virus. *See* docket no. 14 pp. 5-8. Plaintiff contends that the virus exclusion does not apply for multiple reasons, including because (i) there is no indication that Covid-19 was actually present at Plaintiff's properties, and (ii) Nationwide could have made the Virus Exclusion more specific if it intended it to apply in the present circumstances.

Having reviewed the Policy's language and the parties' arguments, the Court finds that Virus Exclusion is unambiguous, as it plainly excludes "loss or damage" caused *even indirectly* by a virus. *See* docket no. 18 pp. 6-7. Equally importantly, Plaintiff's allegations make clear that Plaintiff's business income losses that are the subject of Plaintiff's insurance claim stem—at least indirectly—from the Covid-19 viral pandemic. *See, e.g.*, docket no. 9 ¶ 13 ("[T]he proliferation of the virus, consumer fear of the virus, and the stay at home orders have caused Plaintiff physical loss of the property and loss of business income . . . ."); *id*. at ¶ 12 ("The pandemic and health care crises have resulted in the Plaintiff suffering a physical loss of the insured Property."); *id*. at ¶ 13 ("The presence of Covid-19 in Bexar County and the surrounding counties alone triggers coverage because it renders the Property unsafe or makes it unusable for its intended purpose."); *id*. at ¶ 16 ("At the very least, Plaintiff suffered a physical loss of the covered property as a result of fear and actions taken to limit the impact of the pandemic on the health, safety and welfare of Bexar County citizens").

Notably, many other courts—including at least one in this District and Division—have found that identical or similar "virus exclusions" bar coverage for business interruption losses during the ongoing Covid-19 pandemic. *See, e.g., Diesel Barbershop, LLC v. State Farm Lloyds*, 5:20-CV-461-DAE, 2020 WL 4724305, at *6 (W.D. Tex. Aug. 13, 2020) (holding that similar

Virus Exclusion barred business interruption losses due to Covid-19 public health closure orders because the orders "only came about sequentially as a result of the COVID-19 virus spreading rapidly throughout the community"); *Mauricio Martinez, DMD, P.A. v. Allied Ins. Co. of Am.*, 220CV00401FTM66NPM, 2020 WL 5240218, at *2 (M.D. Fla. Sept. 2, 2020) (dismissing similar contract claim because virus exclusion barred coverage for loss or damage caused "directly or indirectly," by "[a]ny virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease"); *Franklin EWC, Inc. v. Hartford Fin. Services Group, Inc.*, 20-CV-04434 JSC, 2020 WL 5642483, at *2 (N.D. Cal. Sept. 22, 2020) (same, with respect to similar claims and policy that barred coverage for loss caused "directly or indirectly" by the "presence, growth, proliferation, spread or any activity of . . . virus"). Moreover, the Court is unpersuaded by Plaintiff's argument that Nationwide's motion must be denied because Nationwide could have used different language if Nationwide wanted to make even more clear that its Policy excluded coverage in circumstances such as those that have arisen during the ongoing Covid-19 pandemic. *See* docket no. 18 p. 7. Importantly, the fact that Plaintiff could have used *even more* specific language does not automatically render ambiguous the language that Plaintiff actually used. *See In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 210 (5th Cir. 2007) ("The fact that an exclusion could have been worded more explicitly does not necessarily make it ambiguous."). And similarly, the fact that Plaintiff disagrees about the plain meaning of the Policy's Virus Exclusion does not create ambiguity as to that provision. *See Page*, 315 S.W.3d at 527; *Pan Am Equities, Inc.*, 959 F.3d at 674 ("A policy is not ambiguous merely because different parties . . . offer conflicting interpretations.").

In sum, Plaintiff's allegations make clear that its claimed losses stemmed—at least indirectly—from the ongoing Covid-19 virus pandemic, and the Policy's Virus Exclusion

unambiguously excludes coverage for damages that "indirectly" arise from "[a]ny virus . . . that induces or is capable of inducing physical distress, illness or disease" irrespective of whether "any other cause or event that contributes concurrently or in any sequence to the loss." *See* docket no. 14-2 pp. 102-104 of 202.[8] Accordingly, it is clear that the purported coverage claimed by Plaintiff is barred by the "Virus Exclusion" in the Policy, and Nationwide did not breach the Policy by denying coverage for Plaintiff's claimed business income damages. For that reason, Plaintiff's breach of contract claim against Nationwide fails as a matter of law, and Nationwide's Motion to Dismiss must be granted as to Plaintiff's breach of contract claim.

## B. Plaintiff's Extra-contractual Bad-Faith and Statutory Claims

Plaintiff's extra-contractual Texas Insurance Code and bad-faith claims against Nationwide are premised on Nationwide's alleged failure to pay benefits in accordance with the Policy. *See* docket no. 9 ¶¶ 28, 30-33, 36. "As a general rule there can be no claim for bad faith when an insurer has promptly denied a claim that is in fact not covered." *Republic Insurance Co. v. Stoker*, 903 S.W.2d 338, 341 (Tex. 1995). For an insured to recover on a bad-faith insurance claim when the insurer has properly denied coverage for the claim, the insured must demonstrate that the insurer has committed an injury independent of the policy claim. *Id*. Similarly, an insured

---

[8] Plaintiff also argues that the language used in the Virus Exclusion requires that the virus be a living organism or "microorganism" and that the Covid-19 virus is "only a living organism when it has actually invaded a human host." *See* docket no. 18 p. 8. The Court assumes that Plaintiff is aware that the Covid-19 virus has invaded millions of "human hosts," including nearly a million Texans. *See* https://txdshs.maps.arcgis.com/apps/opsdashboard/index.html#/ed483ecd702b4298 ab01e8b9cafc8b83 (last visited Oct. 26, 2020) (Texas Department of State Health Services data showing more than 860,000 confirmed cases in Texas). Indeed, the fact that the virus has invaded so many human hosts is one of the very reasons that Plaintiff's businesses and other have been subject to the government shutdown Orders and/or have suffered other business losses. Thus, *even assuming* that Plaintiff is correct in asserting that the Policy contains such a requirement, it is clear that a virus that "has actually invaded a human host" has—at least indirectly—caused Plaintiff's claimed losses.

cannot recover any damages based on an insurer's statutory violation unless the insured establishes a right to receive benefits under the policy or an independent injury caused by the insurer's conduct. *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 500 (Tex. 2018).

As described in the prior Section, Plaintiff's Policy expressly excludes coverage for Plaintiff's claimed losses. Thus, Nationwide's denial of Plaintiff's insurance claim may not serve as the basis of Plaintiff's extra-contractual claims unless Plaintiff has alleged an independent injury against Nationwide. Notably, the independent-injury rule applies only if the damages are "truly independent" of the alleged right to receive policy benefits. *Menchaca*, 545 S.W.3d at 500. It does not apply where extra-contractual claims are predicated on coverage under the policy or if the damages "flow" or "stem" from the denial of the insured's claim.[9] *Id.*; *see also Progressive County Mutual Ins. Co. v. Boyd*, 177 S.W.3d 919, 922 (Tex. 2005) (concluding that insured's common-law conversion claim, common-law bad-faith claim, and statutory claims were all "negated" because the policy did not cover underlying losses and insured did "not allege that he suffered any damages unrelated to and independent of the policy claim").

In this case, Plaintiff has failed to plausibly allege any "injury" that is "truly independent" of Nationwide's alleged failure to pay benefits under the Policy. Nor does Plaintiff's response attempt to specifically explain how Plaintiff's extra-contractual claims are independent of Plaintiff's contract claims. *See* docket no. 18 pp. 28-29. Thus, because the Policy expressly excludes coverage for Plaintiff's insurance claim, Plaintiff's extra-contractual statutory and bad-faith claims against Nationwide must also be dismissed. *See Stoker*, 903 S.W.2d at 341.

---

[9] Thus, to the extent Plaintiff alleges that Nationwide's denial of its claim forced Plaintiff "to retain the professional services of the attorney and law firm who is representing it" in this case, *see* docket no. 9 ¶ 34, that injury clearly "stems" from the denial of Plaintiff's insurance claim and is not "independent" for the purposes of the independent-injury rule.

### C. Plaintiff's Civil Conspiracy Claim

Finally, Plaintiff's civil conspiracy claim must be dismissed for similar reasons. To state a claim for civil conspiracy under Texas law, a plaintiff must establish: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result. *Apani Sw., Inc. v. Coca-Cola Enters., Inc.*, 300 F.3d 620, 635 (5th Cir. 2002). However, because conspiracy is a derivative tort, liability for conspiracy depends on participation in an underlying tort. *See Tilton v. Marshall,* 925 S.W.2d 672, 681 (Tex. 1996) ("[A] defendant's liability for conspiracy depends on participation in some underlying tort for which the plaintiff seeks to hold at least one of the named defendants liable.").

As described above, Plaintiff has failed to state a claim for any underlying tort against Nationwide (or Worth). Accordingly, Plaintiff may not assert a claim against Nationwide for civil conspiracy. *Vaughan v. State Farm Lloyds*, Civil No. MO-15-CA-17, 2015 WL 13134509, at *3 (W.D. Tex. Aug. 5, 2015) (rejecting claim for civil conspiracy when plaintiff had failed to state a claim for any underlying tort); *Meadows v. Hartford Life Ins. Co.*, 492 F.3d 634, 640 (5th Cir. 2007) (affirming 12(b)(6) dismissal and holding that a claim for civil conspiracy "rises and falls on whether" plaintiff has stated a claim on an underlying tort.).

### D. Leave to Amend

With respect to Plaintiff's claims against Nationwide, the Court finds that Plaintiff's claims should be dismissed with prejudice and without leave to amend. "[W]here amendment would be futile, the court need not grant the plaintiff leave to amend." *In re Sherwin Alumina Co.*, 952 F.3d 229, 236 (5th Cir. 2019). An amendment is futile when "the amended complaint would fail to state a claim upon which relief could be granted." *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 873 (5th

Cir. 2000). As discussed in the prior sections, Plaintiff's claims fail because the Policy does not provide coverage for loss of business income caused by the Covid-19 virus. Courts have regularly denied leave to amend in cases—like this one—in which the plaintiff's various claims are all premised on insurance coverage that does not exist. *See, e.g., Khoei v. Stonebridge Life Ins. Co.*, Civil Action No. H-13-2181, 2014 WL 585399 (S.D. Tex. Feb. 14, 2014) (dismissing claim with prejudice "because the pleadings show that further amendment would be futile"); *Nations Construction Management, Inc. v. Max Specialty Ins. Co.*, Civil Action No. H-10-1796, 2010 WL 11583321, *5 (S.D. Tex. July 15, 2010) (granting dismissal with prejudice "[b]ecause the pleading deficiency cannot be cured by amendment").

In this case, Plaintiff has already amended its complaint twice, once prior to removal and once in response to Nationwide's first motion to dismiss. And neither of Plaintiff's prior amendments nor Plaintiff's briefing indicate that Plaintiff could fix the fundamental deficiencies with its claims in this case. Indeed, the various theories of relief asserted by Plaintiff are all premised on the existence of insurance coverage that is *not* provided by the Policy. Accordingly, it appears evident that providing Plaintiff another attempt to amend its claims would be futile, and for that reason, Plaintiff's claims against Nationwide will be dismissed with prejudice.

## CONCLUSION AND ORDER

For the reasons set forth above, it is hereby **ORDERED** that:

- Plaintiff's Opposed Motion to Remand (docket no. 4) is **DENIED**, and Defendant Bradley Worth is **DISMISSED WITHOUT PREJUDICE** as a party in this case;

- Defendant Nationwide's Motion to Dismiss Plaintiff's Second Amended Petition for Failure to State a Claim (docket no. 14) is **GRANTED**, and Plaintiff's claims against Nationwide are **DISMISSED WITH PREJUDICE**; and

- Defendant Nationwide's original Motion to Dismiss for Failure to State a Claim (docket no. 3) is **DENIED AS MOOT**.

This case is **CLOSED**.

**SIGNED** this  26th  day of October, 2020.

⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
ORLANDO L. GARCIA
Chief United States District Judge